

$400.00

**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**



|  |  |
|---|---|
| UNITED STATES OF AMERICA, and the States of CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VIRGINIA, WASHINGTON, WISCONSIN, and the CITY OF CHICAGO, and the CITY OF NEW YORK, and the DISTRICT OF COLUMBIA *ex rel.* LORETTA REED,<br><br>          Relator-Plaintiffs,<br><br>     v.<br><br>ENDO HEALTH SOLUTIONS, INC. and ENDO PHARMACEUTICALS, INC.,<br><br>          Defendants. | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. §3730**<br><br>C.A. No.: **13    3102**<br><br>**JURY TRIAL DEMANDED**<br><br>**FILED**<br>JUN 05 2013<br>MICHAEL E. KUNZ, Clerk<br>By _____ Dep. Clerk |

## FALSE CLAIMS ACT COMPLAINT

On behalf of the United States of America ("United States"), the States of California,

Connecticut, Colorado, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana,

Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Hampshire, New

Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas,

Virginia, Washington, Wisconsin, (collectively, the "States"), the District of Columbia ("D.C."),

and the City of Chicago and the City of New York ("Cities"), and pursuant to the *qui tam*

provisions of the Federal False Claims Act, 31 U.S.C. §§ 3729-3733 and the False Claims Acts

1

of the States, D.C., and the Cities, Relator-Plaintiff, Loretta Reed, by and through her undersigned attorneys, hereby files this *qui tam* Complaint and demands judgment against Defendants, Endo Health Solutions, Inc. and Endo Pharmaceuticals, Inc. arising from Defendants' false or fraudulent claims for reimbursement for Opana ER (oxymorphone hydrochloride) that were submitted or caused to be submitted by Defendants to federal government-funded programs including, but not limited to, Medicare, Medicaid, TRICARE, and the Veterans Administration in violation of the FCA. As alleged more fully herein, Defendants have taken a patent expiring drug, Opana ER, misbranded and marketed it off-label to increase its utilization in comparison to its generic equivalents, thus causing the United States, States and Cities to incur additional reimbursement expenses to the detriment of the federal government-funded programs. The FCA specifically proscribes Defendants' conduct involving the unlawful marketing of prescription drugs and misbranding violations alleged herein. In support thereof, Relator-Plaintiff avers as follows based upon personal knowledge and relevant documents.

## I. INTRODUCTION

1.      Relator-Plaintiff brings this action on behalf of the United States, the States, D.C., and the Cities against Endo Health Solutions, Inc. and Endo Pharmaceuticals, Inc.'s (hereinafter collectively "Defendants") for treble damages and civil penalties arising from Defendants' conduct in violation of the Federal Civil False Claims Act, 31 U.S.C. § 3729, et seq. ("FCA"), and each of the States', D.C., and the Cities' counterparts. The States, D.C., and the Cities, along with the United States, are hereafter collectively referred to as the Government.

2.      The complained of violations arise out of requests for payment from Medicare, Medicaid, TRICARE, and possibly other federally-funded government healthcare programs (hereinafter the "Government Healthcare Programs").

2

3.     As will be described below in detail, Defendants engaged in a widespread mislabeling scheme, designed to defraud physicians, pharmacists, and their patient population, which resulted in millions of false claims for payment to the Government Healthcare Programs.

## II. PARTIES

4.     Ms. Loretta Reed (hereinafter "Relator-Plaintiff") is an adult individual residing at 1226 Coast Ave. Manahawkin, NJ 08050. Relator-Plaintiff was hired on July 7, 2006 as a Pharmaceutical Sales Representative in Endo Pharmaceuticals, Inc.'s Pain Division. Under her current title, Specialty Sales Consultant, Relator-Plaintiff covers the company's Atlantic City, NJ Territory, which is located in its Philadelphia-Metro District. Currently, Relator-Plaintiff sells Defendants' products to a customer base of approximately one-hundred (100) physicians, the majority of who are primary care physicians.

5.     Endo Health Solutions, Inc. (hereinafter "Endo Health") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1400 Atwater Drive, Malvern, PA 19355.

6.     Endo Health operates a multi-faceted healthcare company, engaged in, *inter alia*, the research, development, sale and marketing of prescription pharmaceuticals. Endo Health is publicly traded on the NASDAQ National Stock Market (ticker symbol: ENDP).

7.     Endo Pharmaceuticals, Inc. (hereinafter "Endo Pharma") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 1400 Atwater Drive, Malvern, PA 19355.

8.     Endo Pharma is a wholly-owned subsidiary of Endo Health, developing and marketing specialty pharmaceutical products for pain management, pelvic health, urology, endocrinology and oncology.

3

## III. JURISDICTION AND VENUE

9. This Court has federal subject matter jurisdiction over the instant action, pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a). This Court has supplemental jurisdiction over the counts relating to the state False Claims Acts pursuant to 28 U.S.C. § 1367.

10. Additionally, this Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because at all times relevant and material hereto, Defendants transacted business in this District and, upon information and belief, continue to do so.

11. Venue is appropriate in this District as, at all times relevant and material hereto, Defendants transacted business in this District, and upon information and belief, continue to do so. Moreover, venue is proper as a number of the incidents giving rise to this action occurred within this District.

12. Relator-Plaintiff's claims and this Complaint are not based upon allegations or transactions which are the subject of a civil suit or an administrative proceeding in which the Government is already a party, as enumerated in 31 U.S.C. § 3730(e)(3).

13. Relator-Plaintiff is the original source of the information upon which this Complaint is based, as that phrase is used in the False Claims Act and other laws at issue herein.

14. Relator-Plaintiff brings this action based on her direct knowledge and, where indicated, on information and belief. None of the actionable allegations set forth in this Complaint are based on a public disclosure as set forth in 31 U.S.C. §3730(e)(4)(A), and Plaintiff-Relator is the original source of the facts alleged in this Complaint.

15. At times relevant hereto, Defendants acted through their agents and employees, and the acts of Defendants' agents and employees were within the scope of their agency and employment. The policies and practices alleged in this Complaint were, on information and

belief, established and/or ratified at the highest corporate levels of Endo Health and Endo Pharma.

## IV. THE REGULATORY ENVIRONMENT

16.     The United States Food, Drug and Cosmetic Act ("FDCA") establishes the framework for regulation of, *inter alia*, the sales and marketing activities of pharmaceutical manufacturers in the United States, including the introduction of new drugs into interstate commerce. When the United States Food and Drug Administration ("FDA") approves a drug, it approves the drug only for the particular use for which it was tested, the specifics of which dictate how a pharmaceutical company can promote the product.

17.     The dissemination of information or materials by a pharmaceutical manufacturer of any unapproved or off-label use, also known as "misbranding," constitutes unlawful promotional advertising of the drug, violates the FDCA, and can also serve as the basis for an FCA violation.

18.     Similarly, the dissemination of misleading information or materials by a pharmaceutical manufacturer, regarding a drug's efficacy, safety, or characteristics, constitutes unlawful promotional advertising of the drug, violates the FDCA, and can also serve as the basis for an FCA violation.

### A.     The False Claims Act 31 U.S.C. § 3729, *et seq.*

19.     The federal False Claims Act provides that any person who knowingly presents or causes another to present a false or fraudulent claim for payment or approval is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a)(1)(A)&(B). The States, D.C., and the Cities that are party to this Complaint have enacted False Claims Act statutes that apply to, *inter alia*,

Medicare and Medicaid fraud and/or fraudulent health care claims submitted for payment by municipal funds.

**B.     FDCA and FDA Regulations**

20.     The Food and Drug Administration ("FDA") regulates drugs based on the "intended uses" for such products.   Before marketing and selling a prescription drug, a manufacturer must demonstrate to the FDA that the product is safe and effective for each intended use.  21 U.S.C. § 331(d); 21 U.S.C. §§ 355(a).

21.     The FDA reviews pharmaceutical manufacturers' applications for new drugs to determine whether the drug's intended uses are safe and effective. *See* 21 U.S.C. § 355.  Once a drug is approved for a particular use, doctors are free to prescribe the drug for "non-indicated" or off-label purposes.     While doctors may independently request information from drug manufacturers about such off-label uses, with very few exceptions, the FDA prohibits drug manufacturers from marketing or promoting drugs for uses, i.e. "indications," not approved by the FDA.  As described herein, "off-label" refers to the marketing of an FDA-approved drug using false or misleading information regarding a drug's efficacy, safety, or characteristics, i.e., the dissemination of information and/or materials not approved by the FDA.

22.     Sales and marketing presentations, promotions, or marketing to physicians using false or misleading information regarding a drug's efficacy, safety, or characteristics are considered off-label marketing or "misbranding" proscribed by the FDA.  *See* 21 U.S.C. §§ 331(a) – (b), 352(a), (f).  Additional proscribed marketing activity includes any attempts by a pharmaceutical sales representative to solicit discussions with physicians concerning off-label use.

23.     Significant policy reasons exist for strict regulation of off-label marketing. Off-label promotion bypasses the FDA's strict review and approval process and removes the incentive to obtain definitive clinical study data showing the efficacy and safety of a product and, accordingly, the medical necessity for its use.

24.     Pursuant to the FDCA, 21 U.S.C. §§ 301 *et seq.*, the FDA strictly regulates the content of direct-to-physician product promotion and drug labeling information used by pharmaceutical companies to market and sell FDA-approved prescription drugs.

25.     The FDA interprets "labeling" in its regulations broadly to include items that are "1) descriptive of a drug; 2) supplied by the manufacturer or its agents; and 3) intended for use by medical personnel." 21 C.F.R. § 202.1. The FDCA defines both misleading statements and the failure to reveal material facts in a label or product labeling as "misbranding." 21 U.S.C. § 321(n). Labeling includes, among other things, brochures, booklets, detailing pieces, literature, reprints, sound recordings, exhibits and audio visual material. 21 C.F.R. § 202.1(1)(2).

26.     FDA regulations deem "advertising" to include advertisements in published journals, magazines, newspapers and other periodicals, and broadcast through media such as television, radio, and telephone communications systems. *See* 21 C.F.R. § 202.1(I)(1). Courts have consistently held that oral statements made by a company's sales representative relating to a pharmaceutical product constitute commercial advertising or promotion. *See Abbott Labs. v. Mead Johnson &Co.*, 971 F.2d 6, 7 (7th Cir. 1992) (interpreting Lanham Act).

27.     Pharmaceutical promotional and marketing materials and presentations lacking in fair balance or that are otherwise false or misleading "misbrand" a drug in violation of the FDCA, 21 U.S.C. §§301, 321, 331, 352, 360b, 371; C.F.R. § 202.1(e)(6), (e)(7); 21 C.F.R. § 1.21.

7

28.     Such violations exist where promotional marketing materials and presentations

(*i.e.* advertisements) for an FDA approved drug, among other things:

- Minimize, understate, or misrepresent the side effects, contraindications and/or effectiveness of the drug;

- Overstate or misrepresent the side effects, contraindications, and/or effectiveness of competing drugs;

- Expressly or implicitly promote uses, dosages or combination usage of the drug that are not contained in the FDA approved labeling (*i.e.*, off-label uses);

- Fail to reveal material facts with respect to consequences that may result from the use of the drug as recommended or suggested in the advertisement;

- Contain representations or suggestions, not approved or permitted in the labeling, that the drug is better, more effective, useful in a broader range of conditions or patients, safer, or has fewer, or less incidence of, or less serious side effects or contraindications than demonstrated by substantial evidence or substantial clinical experience;

- Present information from a study in a way that implies that the study represents larger or more general experience with the drug than it actually does;

- Use a quote or paraphrase out of context to convey a false or misleading idea; and/or

- Are otherwise false, misleading or lacking in fair balance in the presentation of information about the drug being marketed or any competing drug.

*See* 21 C.F.R. § 202.1(e)(4)(5)(6), and (7).

## V. FACTS OF THE CASE

29.     Opana ER (oxymorphone hydrochloride) is a powerful opioid agonist pain killer,

manufactured and sold by Defendants.

8

30.     On June 22, 2006, the original formulation of Opana ER (hereinafter "Opana ER Original") was approved by the FDA and indicated for the relief of moderate to severe pain in patients requiring continuous around-the-clock opioid treatment for extended periods of time.

31.     On July 7, 2010, in the midst of patent litigation regarding Opana ER Original, Defendants submitted New Drug Application ("NDA") 201655 for a reformulated version of the drug to the FDA, boasting purported "crush resistant" properties designed to curb improper use of the product through insufflation or intravenous injection.

32.     In actuality the new product was effectively identical to Opana ER Original and as the FDA would later determine, Defendants' claim that the new formula was resistant to tampering or abuse was largely if not completely false.

33.     Meanwhile, in December of 2010, the FDA approved two generic versions of Defendants' Opana ER Original (hereinafter the "Generics"); one manufactured by Actavis, Inc. entered the market in July of 2011 (limited to 7.5 and 15 milligram dosages), the other manufactured by Impax Laboratories, Inc. entered the market in January of 2013.

34.     On December 9, 2011, Opana ER's new formulation (hereinafter "Opana ER New Formula") was approved by the FDA. However, while FDA approved the product noting its safety and efficacy, the agency specifically discounted Defendants' claim that Opana ER New Formula was crush resistant or otherwise impervious to abuse. In fact, FDA's Center for Drug Research and Evaluation's Summary Review, which accompanied its approval letter for NDA 201655, specifically states that the label for Opana ER New Formula should "not include language asserting that Opana ER provides resistance to crushing. The Division agrees with this, as has the Applicant [Defendants], since the extended release characteristics of the formulation are compromised by cutting, chewing or grinding."

9

35.     Almost immediately thereafter, Defendants voluntarily withdrew Opana ER Original from the market and began openly marketing Opana ER New Formula as a product superior to the Generics, due to its purported crush resistant technology; a feature called INTAC, the result of a partnership with Germany's Grünenthal Group.  Moreover, Defendants did so with the express knowledge that the FDA had affirmatively refuted this claim.

36.     Upon information and belief, this illegal marketing was sanctioned by the highest levels of Defendants' corporate hierarchy, including *inter alia*, Dave Holveck, President and CEO; Brian Lortie, Senior Vice President of Branded Pharmaceuticals; Randall C. Mastangelo, Senior Director of Brand Marketing for Pain Solutions; and Larry Romaine, Vice President of Sales for Pain and Urology.

37.     Defendants internally launched Opana ER New Formula at an elaborate National Sales Meeting in Las Vegas, NV the week of February 27, 2012, wherein the product's INTAC technology and purported crush resistant properties were heavily pushed upon the company's sales force in training and break-out sessions.  However, Defendants' indoctrination of the sales force began prior to the meeting, with online training through Defendants' "Endo University," an online training portal.

38.     Following the Las Vegas meeting, Defendants began misleading its sales force in a calculated and systematic manner, consistently misrepresenting Opana ER New Formula's purported crush resistant technology.

39.     To pursue its efforts to misbrand Opana ER New Formula as resistant to tampering or abuse, Defendants constantly bombarded the sales force with emails, voicemails, and in person training, which consistently referred to the product as "crush resistant" or "designed to be crush resistant" and to the Generics as "non-crush resistant" or "not designed to

10

be crush resistant." This purposeful behavior led to widespread ignorance within the sales force regarding the fact that the product was not actually resistant to manipulation, as specifically noted by the FDA.

40.     While these communications sometimes made reference to the fact that no studies or data existed to support its claims, these fleeting suggestions were completely overshadowed by constant declarations regarding Opana ER New Formula's crush resistant properties. The message from Defendants was clear; Opana ER New Formula contained valuable crush resistant technology that the Generics did not.

41.     In addition to the constant barrage of email communications, Defendants further instructed its sales force to market Opana ER New Formula's purported crush resistant properties through live Plan-Of-Action meetings (hereinafter "POA").  Relator-Plaintiff personally attended POAs at the Marriott hotel in Baltimore, MD, June 11-13, 2012 and at the Sofitel hotel in Philadelphia, PA, February 26-28, 2013, wherein sales representatives received training on the utilization of Opana ER New Formula's purported crush resistant technology as a valuable selling point to potential customers.

42.     Defendants' sales force also participated in Webex webinars, which similarly instructed sales representatives to tout Opana ER New Formula's crush resistance as a property rendering the Generics inferior.  Relator-Plaintiff personally participated in one such webinar on January 7, 2013.

43.     In addition to the active indoctrination of its sales force, Defendants armed sales representatives with marketing items specifically designed to mislead physicians and pharmacists into believing that Opana ER New Formula did indeed possess crush resistant properties, not available with the Generics.

11

44.     Defendants' sales representatives were also given tablet computers, which contained an application called "Atlas," which were routinely updated with slides containing promotional information (also known as Digital Master Visuals Aides or "DMVAs") regarding Opana ER New Formula. Unsurprisingly, these slides contained assertions touting the product's crush resistant properties. The photographs below are screen shots from DMVAs on Relator-Plaintiff's company issued tablet, displaying slides containing the misrepresenting language described herein.




45.     Perhaps one of the most brazen efforts by Defendants to misrepresent Opana ER New Formula's purported crush resistant technology occurred when promotional samples of the product's INTAC technology (hereinafter the "INTAC Cards") were distributed to its sales force.

46.     The INTAC Cards contained a sample, approximately one-inch in length, of material designed by Grünenthal Group, which according to Defendants, gave Opana ER New Formula its purported crush resistant properties.

47.     Defendants instructed the sales force to distribute the INTAC Cards to their customers to allow physicians and pharmacists to feel the "strength" of their product.

12

48.    Relator-Plaintiff, however, asserts that many sales representatives used the INTAC Cards in patently absurd demonstrations, designed to misrepresent the purported crush resistant properties of Opana ER New Formula; including striking the samples with hammers and other tools, placing them in glasses of liquid, microwaving samples, etc.  While Defendants did not affirmatively sanction this behavior, Relator-Plaintiff asserts that Defendants took no steps to mitigate, prevent, or halt such displays after learning of same.  A photograph of one of Defendants' INTAC Cards is displayed below.



49.    Defendants marketing efforts were purposely designed to fraudulently manipulate prescribing physicians, whose genuine interest in crush resistant technology and curbing drug abuse, led them to switch their patients to Opana ER New Formula and forgo less expensive alternatives, such as the Generics.

50.    Defendants consistently instructed the sales force to coach doctors to write instructions such as, "dispense as written" or "do not substitute," on prescriptions to ensure their patients received Opana ER New Formula from dispensing pharmacies, as opposed to having Pharmacists unilaterally change the prescriptions to cheaper alternatives such as the Generics.

13

51.     As a direct and proximate result of the misbranding efforts, physicians nationwide, in reliance on Defendants' fraudulent sales pitch, began prescribing Opana ER New Formula to their patients, specifically forgoing less costly alternatives such as the Generics. This in turn resulted in the submission of more expensive claims for payment to the Government Healthcare Programs.

52.     However, these additional costs to the Government Healthcare Programs were fraudulent, as the entire basis of the more expensive prescriptions was rooted in Defendants' illegal misbranding and misleading of physicians through their off-label marketing campaign.

53.     Table One, below, provides an illustrative sample of the cost of filling a prescription for Opana ER New Formula, versus the less costly Generics, as charged by three pharmacies in Relator-Plaintiff's sales Territory; CVS Pharmacy located at 6818 Tilton Road Egg Harbor, NJ 08234, Rite-Aid Pharmacy located at 1315 New Road Northfield, NJ 08225, and Target Pharmacy, located at 380 Consumer Square, Mays Landing, NJ 08330.

| TABLE ONE | | | |
|---|---|---|---|
| Pharmacy | Strength (60 pills) | Opana ER | Generic (oxymorphone hydrochloride) |
| Rite-Aid | 10mg | $308.99 | $215.99 |
| CVS | 20mg | $523.99 | $405.99 |
| Target Pharmacy | 5mg | $156.99 | $130.99 |
| | 7.5mg | $206.99 | not available |
| | 10mg | $282.99 | $230.99 |
| | 15mg | $344.49 | not available |
| | 20mg | $493.99 | $397.99 |
| | 30mg | $738.99 | $574.99 |
| | 40mg | $906.99 | $745.99 |

54.     Relator-Plaintiff asserts that such tactics were extremely fruitful. By way of example, the following physicians specifically switched patients to Opana ER New Formula, due to their interest in curbing illegal drug use; Dr. Manish Singh, Neurology & Pain

14

Management; Dr. George Dendrinos, Family Practice; Diana Hewlett, DNP (Doctor of Nursing Practice), Anesthesiology & Pain Management; Alice Jones, DNP, Anesthesiology & Pain Management; Marissa Smargiassi, Pain Management PA (Physician's Assistant); Dr. Jeffrey Petersohn, Anesthesiology & Pain Management; and Dr. Timothy Rhyme, Family Practice.

55.     In fact, Relator-Plaintiff asserts that, due to the similarities between Opana ER New Formula and the Generics, the product's purported crush resistance was the only viable selling point available to the sales force.

56.     In furtherance of their efforts to corner the market, on August, 13, 2012, Defendants submitted a Citizens' Petition to the FDA, requesting the agency to (1) determine that Opana ER Original was discontinued for safety reasons, (2) to withdraw approval of the Generics for safety reasons given that they lack crush resistant technology, and (3) to prevent the approval of additional generic versions of Opana ER Original.  Defendants supplemented the original petition with several addendums.

57.     During the pendency of the Citizens' Petition, Defendants continued to misbrand and aggressively market Opana ER New Formula off-label, based on unapproved assertions that it is resistant to crushing or tampering.

58.     On October 11, 2012, the FDA issued a press release regarding a dangerous condition associated with abuse of Opana ER New Formula.  The release explained that intravenous injection of the drug can cause a serious blood disorder called thrombotic thrombocytopenic purpura (TTP), which in turn can result in complete kidney failure, requiring dialysis.

59.     This press release regarding TTP and the general dangers associated with abuse of opioid pain medicine, dramatically highlights the mortal consequences of a pharmaceutical company misrepresenting one of its products as resistant to crushing, tampering, or abuse.

60.     Ultimately, on May 10, 2013, the FDA issued a response to the Citizens' Petition denying all three of its requests. In its explanation for the denial, the FDA noted that Opana ER New Formula is susceptible to preparation for insufflation and intravenous injection via normal and common methods of manipulation and is thus no safer than Opana ER Original and the Generics.  Moreover, the FDA found that Opana ER New Formula may in fact be more susceptible to preparation for intravenous injection than Opana ER Original and the Generics.

61.     Relator-Plaintiff asserts that, due to Defendants' successful indoctrination, manipulation, and continuing misrepresentations regarding Opana ER New Formula's purported crush resistant properties, news of the FDA's May 10, 2013, denial of the Citizens' Petition was the first time members of the sales force learned that the product was indeed not impervious to tampering or abuse.

62.     Immediately following the FDA's May 10, 2013 announcement, Defendants ordered a dramatic shift in its marketing methods for Opana ER New Formula. For instance, within days of the announcement, Defendants ordered sales representatives to sync and update their tablets, purportedly to download new approved materials and DMVAs.  According to Relator-Plaintiff, this process erased all traces of slides and/or images alluding to Opana ER New Formula's crush resistant properties, such as those illustrated above.

63.     This marketing shift notwithstanding, Defendants have been extremely successful in their efforts to illegally market Opana ER New Formula as crush resistant, with sales of the drug totaling $299.3 million in 2012 alone.

16

## COUNT I – FALSE CLAIMS ACT
## 31 U.S.C. §3729(a)(1)(A)

64.     Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

65.     This Count is brought by Relator-Plaintiff in the name of the United States under the *qui tam* provisions of 31 U.S.C. § 3730 for Defendants' violations of 31 U.S.C. § 3729(a)(1)(A).

66.     By virtue of the above-described acts, Defendants knowingly caused to be presented false or fraudulent claims for payment or approval, and continue to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees or agents of the United States.   Specifically, in reliance on Defendants' illegal misbranding and misrepresentations regarding crush resistant technology, physicians nationwide began prescribing their patients Opana ER New Formula, as opposed to less costly alternatives such as the Generics.

67.     Plaintiff, United States, unaware of the falsity of the claims caused to be made by Defendants and in reliance on the accuracy thereof, has paid for claims that would otherwise not have been allowed.

68.     The amounts of the false or fraudulent claims caused by Defendants to be submitted to the United States were material.

69.     By virtue of the false or fraudulent claims made or caused to be made by the Defendants, the United States has suffered damages and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

WHEREFORE, Relator-Plaintiff, Loretta Reed, on behalf of herself and the United States government, requests the following relief:

17

(a)     that the Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each action in violation of 31 U.S.C. § 3729, and the costs of this action, with interest, including the costs to the United States Government for its expenses related to this action;

(b)     that in the event that the United States Government continues to proceed with this action, Relator-Plaintiff be awarded an amount for bringing this action of 25% of the proceeds of the action or the settlement of any such claim;

(c)     that in the event that the United States Government does not proceed with this action, Relator-Plaintiff be awarded an amount for collecting the civil penalty and damages of 30% of the proceeds of this action or the settlement of any such claim;

(d)     that Relator-Plaintiff be awarded all costs, attorneys' fees, and litigation expenses; and

(e)     that the United States Government and Relator-Plaintiff receive all relief, both at law and in equity, to which they may reasonably appear entitled.

## COUNT II – FALSE CLAIMS ACT
### 31 U.S.C. §3729(a)(1)(B)

70.     Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

71.     This Count is brought by Relator-Plaintiff in the name of the United States under the *qui tam* provisions of 31 U.S.C. § 3730 for Defendants' violations of 31 U.S.C. § 3729(a)(1)(B).

72.     By virtue of the above-described acts, Defendants knowingly caused to be made or used false records or statements to get false or fraudulent claims for payment or approval by the United States, and continues to make, use or cause false records and statements to be made or used to get false or fraudulent claims paid or approved by the United States. Specifically, in reliance on Defendants' illegal misbranding and misrepresentations regarding crush resistant

18

technology, physicians nationwide began prescribing their patients Opana ER New Formula, as opposed to less costly alternatives such as the Generics.

73.     Plaintiff, United States, unaware of the falsity of the records and/or statements caused to be made and used by Defendants, and in reliance on the accuracy thereof, has paid and approved, and continues to pay and approve, claims that were ineligible for reimbursement and would not have been paid or approved if any part of the truth were known.

74.     The amounts of the false or fraudulent claims caused by Defendants to be submitted to the United States were material.

75.     By virtue of the false or fraudulent claims made or caused to be made by the Defendants, the United States has suffered damages and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

WHEREFORE, Relator-Plaintiff, Loretta Reed, on behalf of herself and the United States government, requests the following relief:

(a)     that the Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each action in violation of 31 U.S.C. § 3729, and the costs of this action, with interest, including the costs to the United States Government for its expenses related to this action;

(b)     that in the event that the United States Government continues to proceed with this action, Relator-Plaintiff be awarded an amount for bringing this action of 25% of the proceeds of the action or the settlement of any such claim;

(c)     that in the event that the United States Government does not proceed with this action, Relator-Plaintiff be awarded an amount for collecting the civil penalty and damages of 30% of the proceeds of this action or the settlement of any such claim;

(d)     that Relator-Plaintiff be awarded all costs, attorneys' fees, and litigation expenses; and

19

(e)     that the United States Government and Relator-Plaintiff receive all relief, both at law and in equity, to which they may reasonably appear entitled.

## COUNT III – FALSE CLAIMS ACT
## 31 U.S.C. §3729(a)(1)(C)

76.     Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

77.     Defendants entered into conspiracies with their sales and marketing agents for the purpose of defrauding the Plaintiff, United States.

78.     By engaging in the illegal conduct described herein, Defendants took actions in furtherance of their conspiracies, including but not limited an aggressive misbranding marketing scheme designed to misrepresent the purported crush resistant properties of Opana ER New Formula, thereby exponentially increasing the number of the drug's prescriptions submitted to the United States for payment.  Specifically, in reliance on Defendants' illegal misbranding and misrepresentations regarding crush resistant technology, physicians nationwide began prescribing their patients Opana ER New Formula, as opposed to less costly alternatives such as the Generics.

79.     By the foregoing acts and omissions, Defendants entered into these unlawful marketing conspiracies to defraud the United States by causing false and fraudulent claims to be paid and approved in violation of the False Claims Act, 31 U.S.C. §3729(a)(1)(C).

80.     At all times relevant and material hereto, Defendants engaged in the aforesaid conduct with the requisite knowledge.

81.     As a direct and proximate consequence of Defendants' conspiratorial conduct, the United States has suffered significant, material financial damages in an amount to be proved at trial.

82.     The amounts of the false or fraudulent claims caused by Defendants to be submitted to the United States were material.

83.     By virtue of the false or fraudulent claims made or caused to be made by the Defendants, the United States has suffered damages and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

WHEREFORE, Relator-Plaintiff, Loretta Reed, on behalf of herself and the United States government, requests the following relief:

(a)     that the Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each action in violation of 31 U.S.C. § 3729, and the costs of this action, with interest, including the costs to the United States Government for its expenses related to this action;

(b)     that in the event that the United States Government continues to proceed with this action, Relator-Plaintiff be awarded an amount for bringing this action of 25% of the proceeds of the action or the settlement of any such claim;

(c)     that in the event that the United States Government does not proceed with this action, Relator-Plaintiff be awarded an amount for collecting the civil penalty and damages of 30% of the proceeds of this action or the settlement of any such claim;

(d)     that Relator-Plaintiff be awarded all costs, attorneys' fees, and litigation expenses; and

(e)     that the United States Government and Relator-Plaintiff receive all relief, both at law and in equity, to which they may reasonably appear entitled.

## COUNT IV – CALIFORNIA FALSE CLAIMS ACT

84.     Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

85.     This Count is brought by Relator-Plaintiff, on behalf of the State of California to recover treble damages and civil penalties pursuant to the *qui tam* provisions of the California False Claims Act, Cal. Gov't. Code § 12650 et seq.

86.     Cal. Gov't Code § 12651(a) in pertinent part provides liability for any person who:

        (1)     Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval; or
        (2)     Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim; or
        (3)     Conspires to commit a violation of this subdivision.

87.     Defendants violated California False Claims Act, Cal. Gov't. Code § 12650 *et seq.*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of California by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

88.     The State of California, by and through the California Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

89.     Compliance with applicable Medicare, Medi-Cal and the various other federal and state laws cited herein was an implied, and upon information and belief; also an express condition of payment of claims submitted to the State of California in connection with Defendants' conduct. Compliance with applicable California statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of California.

90.     Had the State of California known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the Government Healthcare Programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

91.     As a result of Defendants' violations of California False Claims Act, Cal. Gov't. Code § 12650 et seq., the State of California has been damaged in an amount far in excess of millions of dollars exclusive of interest.

92.     Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Cal. Gov't Code § 12652(c)(1) on behalf of her and the State of California.

93.     This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of California in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF CALIFORNIA:

(1)     Three times the amount of actual damages which the State of California has sustained as a result of Defendants' conduct;
(2)     A civil penalty of up to $10,000 for each false claim which Defendant presented or caused to be presented to the State of California;
(3)     Prejudgment interest; and
(4)     All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)     The maximum amount allowed pursuant to California False Claims Act, Cal. Gov't. Code § 12650 et seq., and/or any other applicable provision of law;

23

(2)     Reimbursement for reasonable expenses which Relator-Plaintiff incurred in
        connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT V – COLORADO MEDICAID FALSE CLAIMS ACT

94.     Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs

as if the same were set forth at length herein.

95.     This count is brought by Relator-Plaintiff on behalf of the State of Colorado to

recover treble damages and civil penalties pursuant to the *qui tam* provisions of the Colorado

Medicaid False Claims Act, C.R.S.A. § 25.5-4-304, et seq.

96.     Colorado Medicaid False Claims Act, C.R.S.A. § 25.5-4-305, in pertinent part

provides for liability for any person who:

> (a) Knowingly presents, or causes to be presented, to an officer or
> employee of the state a false or fraudulent claim for payment or
> approval;
>
> (b) Knowingly makes, uses, or causes to be made or used a false
> record or statement material to a false or fraudulent claim;
>
> * * *
>
> (g) Conspires to commit a violation of paragraphs (a) to (f) of this
> subsection (1).

97.     Defendants violated the Colorado Medicaid False Claims Act, C.R.S.A. § 25.5-4-

304, et seq., by engaging in the conduct described herein.

98.     Defendants furthermore violated the Colorado Medicaid False Claims Act,

C.R.S.A. § 25.5-4-304, et seq., and knowingly caused hundreds of thousands of false claims to

be made, used and presented to the State of Colorado by its deliberate and systematic violation of

federal and state laws, including the FDCA, and by virtue of the fact that none of the claims

24

submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

99.     The State of Colorado, by and through the Colorado Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

100.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Colorado in connection with Defendants' conduct. Compliance with applicable Colorado statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Colorado.

101.     Had the State of Colorado known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct

102.     As a result of Defendants' violations of the Colorado Medicaid False Claims Act, C.R.S.A. § 25.5-4-304, et seq., the State of Colorado has been damaged in an amount far in excess of millions of dollars exclusive of interest.

103.     Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Colorado Medicaid False Claims Act, C.R.S.A. § 25.5-4-304, et seq. on behalf of herself and the State of Colorado.

104.    This Court is requested to accept pendant jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts separate

damage to the State of Colorado in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following

damages to the following parties and against Defendants:

To the STATE OF COLORADO:

(1)    Three times the amount of actual damages which the State of Colorado has
       sustained as a result of Defendants' conduct;
(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false
       claim which Defendants caused to be presented to the State of Colorado;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)    The maximum amount allowed pursuant to Colorado Medicaid False Claims Act,
       C.R.S.A. § 25.5-4-304, et seq., and/or any other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relator-Plaintiff incurred in
       connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and
(4)    Such further relief as this Court deems equitable and just.

## COUNT VI – CONNECTICUT FALSE CLAIMS ACT

105.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs

as if the same were set forth at length herein.

106.    This Count is brought by Relator-Plaintiff on behalf of the State of Connecticut to

recover treble damages and civil penalties pursuant to the *qui tam* provisions of the Connecticut

False Claims Act, C.G.S.A. § 17b-301a, et seq.

107.    C.G.S.A. § 17b-301b in pertinent part provides for liability as follows:

(a) No person shall:

> (1) Knowingly present, or cause to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval under a medical assistance program administered by the Department of Social Services;
> (2) Knowingly make, use or cause to be made or used, a false record or statement to secure the payment or approval by the state of a false or fraudulent claim under a medical assistance program administered by the Department of Social Services;
> (3) Conspire to commit a violation of this section;

108.    Defendants violated the Connecticut False Claims Act, C.G.S.A. § 17b-301b, by engaging in the conduct described herein.

109.    Defendants furthermore violated the Connecticut False Claims Act, C.G.S.A. § 17b-301b, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Connecticut by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

110.    The State of Connecticut, by and through the Connecticut Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

111.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Connecticut in connection with Defendants' conduct. Compliance with applicable Connecticut statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Connecticut.

112.    Had the State of Connecticut known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants'

27

conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

113.    As a result of Defendants' violations of the Connecticut False Claims Act, C.G.S.A. § 17b-301a, et seq., the State of Connecticut has been damaged in an amount far in excess of millions of dollars exclusive of interest.

114.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to C.G.S.A. § 17b-301d on behalf of herself and the State of Connecticut.

115.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Connecticut in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF CONNECTICUT:

(1)    Three times the amount of actual damages which the State of Connecticut has sustained as a result of Defendants' conduct;
(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Connecticut;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)    The maximum amount allowed pursuant to Connecticut False Claims Act, C.G.S.A. § 17b-301a et seq., and/or any other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and
(4)    Such further relief as this Court deems equitable and just.

## COUNT VII – DELAWARE FALSE CLAIMS AND REPORTING ACT

116. Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs

as if the same were set forth at length herein.

117. Relator-Plaintiff brings this action on behalf of the State of Delaware to recover

treble damages and civil penalties pursuant to the *qui tam* provisions of the Delaware False

Claims and Reporting Act, 6 Del. C. § 1201 et seq.

118. 6 Del. C. § 1201(a) in relevant part provides liability for any person who –

(1) Knowingly presents, or causes to be presented to an officer or
employee of the Government a false or fraudulent claim for
payment or approval;

(2) Knowingly makes, uses or causes to be made or used a false
record or statement to get a false or fraudulent claim paid or
approved by the Government;

(3) Conspires to defraud the Government by getting a false or
fraudulent claim allowed or paid;

119. Defendants violated 6 Del. C. § 1201(a) by engaging in the conduct described

herein.

120. Defendants furthermore violated the Delaware False Claims and Reporting Act, 6

Del. C. § 1201 et seq., and knowingly caused hundreds of thousands of false claims to be made,

used and presented to the State of Delaware by its deliberate and systematic violation of federal

and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in

connection with its conduct were even eligible for reimbursement by the Government Healthcare

Programs.

121. The State of Delaware, by and through the Delaware Medicaid program and other

state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by

healthcare providers and third party payers in connection therewith.

122.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Delaware in connection with Defendants' conduct. Compliance with applicable Delaware statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Delaware.

123.    Had the State of Delaware known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

124.    As a result of Defendants' violations of the Delaware False Claims and Reporting Act, 6 Del. C. § 1201 et seq, the State of Delaware has been damaged in an amount far in excess of millions of dollars exclusive of interest.

125.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to 6 Del. C. § 1203(b) on behalf of herself and the State of Delaware.

126.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Delaware in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF DELAWARE:

(1)    Three times the amount of actual damages which the State of Delaware has sustained as a result of Defendants' conduct;

30

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Delaware;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)    The maximum amount allowed pursuant to 6 Del C. § 1205, and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT VIII – FLORIDA FALSE CLAIMS ACT

127.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

128.    Relator-Plaintiff brings this action on behalf of the State of Florida to recover treble damages and civil penalties pursuant to the *qui tam* provisions of the Florida False Claims Act, Fla. Stat. § 68.081 *et seq.*

129.    Fla. Stat. § 68.082(2) in relevant part provides liability for any person who –

(a) knowingly presents, or causes to be presented, to an officer or employee of an agency a false or fraudulent claim for payment or approval;

(b) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by an agency;

(c) conspires to submit a false claim to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed-or paid.

130.    Defendants violated Fla. Stat. § § 68.081 *et seq.* by engaging in the conduct described herein.

31

131.     Defendants furthermore violated the Florida False Claims Act, Fla. Stat. § 68.081 *et seq.*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Florida by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

132.     The State of Florida, by and through the Florida Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

133.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Florida in connection with Defendants' conduct.  Compliance with applicable Florida statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Florida.

134.     Had the State of Florida known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct

135.     As a result of Defendants' violations of the Florida False Claims Act, Fla. Stat. § 68.081 et seq., the State of Florida has been damaged in an amount far in excess of millions of dollars exclusive of interest.

32

136. Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Fla. Stat. § 68.083(2) on behalf of herself and the State of Florida.

137. This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Florida in the operation of its Medicaid program

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF FLORIDA:

(1)     Three times the amount of actual damages which the State of Florida has sustained as a result of Defendants' conduct;
(2)     A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Florida;
(3)     Prejudgment interest; and
(4)     All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)     The maximum amount allowed pursuant to Fla. Stat. § 68.085, and/or any other applicable provision of law;
(2)     Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;
(3)     An award of reasonable attorneys' fees and costs; and
(4)     Such further relief as this Court deems equitable and just.

## COUNT IX – GEORGIA FALSE MEDICAID CLAIMS ACT

138. Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

139. Relator-Plaintiff brings this action on behalf of the State of Georgia to recover treble damages and civil penalties pursuant to the *qui tam* provisions of the Georgia False Medicaid Claims Act, GA ST § 49–4–168 *et seq.*

140.    GA ST § 49–4–168.1 in pertinent part provides for liability for any person that:

(1) Knowingly presents or causes to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval;

(2) Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim;

(3) Conspires to defraud the Georgia Medicaid program by getting a false or fraudulent claim allowed or paid;

141.    Defendants violated the Georgia False Medicaid Claims Act, GA ST § 49–4–168 *et seq.*, by engaging in the conduct described herein.

142.    Defendants violated the Georgia False Medicaid Claims Act, GA ST § 49–4–168 *et seq.*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Georgia by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

143.    The State of Georgia, by and through the Georgia Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

144.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Georgia in connection with Defendants' conduct. Compliance with applicable Georgia statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Georgia.

145.    Had the State of Georgia known that Defendants' were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct

34

failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

146.    As a result of Defendants' violations of the Georgia False Medicaid Claims Act, GA ST § 49–4–168 *et seq*., the State of Georgia has been damaged in an amount far in excess of millions of dollars exclusive of interest.

147.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Georgia False Medicaid Claims Act, GA ST § 49–4–168 *et seq*., on behalf of herself and the State of Georgia.

148.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Georgia in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF GEORGIA:

(1)    Three times the amount of actual damages which the State of Georgia has sustained as a result of Defendants' conduct;
(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Georgia;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)    The maximum amount allowed pursuant to Georgia False Medicaid Claims Act, GA ST § 49–4–168 *et seq*., and/or any other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and
(4)    Such further relief as this Court deems equitable and just.

35

## COUNT X – HAWAII FALSE CLAIMS ACT

149.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

150.    Relator-Plaintiff brings this action on behalf of the State of Hawaii to recover treble damages and civil penalties pursuant to the qui tam provisions of the Hawaii False Claims Act, HRS § 661-21, *et seq.*

151.    HRS § 661-21 (a) in relevant part provides liability for any person who –

> (1) Knowingly presents, or causes to be presented, to an officer or employee of the State a false or fraudulent claim for payment or approval;

> (2) Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

> (3) Conspires to defraud the State by getting a false or fraudulent claim allowed or paid;

152.    Defendants violated the Hawaii False Claims Act, HRS § 661-21 *et seq.*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Hawaii by its deliberate and systematic violation of federal and state laws, including the FDCA and Anti-Kickback Act, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

153.    The State of Hawaii, by and through the Hawaii Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

154.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief; also an express

condition of payment of claims submitted to the State of Hawaii in connection with Defendants'
conduct. Compliance with applicable Hawaii statutes, regulations and Pharmacy Manuals was
also an express condition of payment of claims submitted to the State of Hawaii.

155.    Had the State of Hawaii known that Defendants' were violating the federal and
state laws cited herein and/or that the claims submitted in connection with Defendants' conduct
failed to meet the reimbursement criteria of the government-funded healthcare programs or were
premised on false and/or misleading information, it would not have paid the claims submitted by
healthcare providers and third party payers in connection with that conduct.

156.    As a result of Defendants' violations of the Hawaii False Claims Act, HRS § 661-
21 *et seq.*, the State of Hawaii has been damaged in an amount far in excess of millions of dollars
exclusive of interest.

157.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the
allegations of this Complaint, who has brought this action pursuant to Hawaii False Claims Act,
HRS § 661-21 *et seq.*, on behalf of herself and the State of Hawaii.

158.    This Court is requested to accept pendant jurisdiction of this related state claim as
it is predicated upon the exact same facts as the federal claim, and merely asserts separate
damage to the State of Hawaii in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following
damages to the following parties and against Defendants:

To the STATE OF HAWAII:

(1)     Three times the amount of actual damages which the State of Hawaii has
        sustained as a result of Defendants' conduct;
(2)     A civil penalty of not less than $5,000 and not more than $10,000 for each false
        claim which Defendants caused to be presented to the State of Hawaii;
(3)     Prejudgment interest; and
(4)     All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)     The maximum amount allowed pursuant to HRS §661-27, and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XI – ILLINOIS WHISTLEBLOWER REWARD & PROTECTION ACT

159.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

160.    Relator-Plaintiff brings this action on behalf of the State of Illinois to recover treble damages and civil penalties pursuant to the *qui tam* provisions of the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175 *et seq.*

161.    740 ILCS 175/3(a)(1) in pertinent part provides liability for any person who –

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

162.    Defendants knowingly violated 740 ILCS 175 *et seq.* by engaging in the conduct described herein.

163.    Defendants violated the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175 *et seq.*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Illinois by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in

38

connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

164.    The State of Illinois, by and through the Illinois Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

165.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Illinois in connection with Defendants' conduct. Compliance with applicable Illinois statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Illinois.

166.    Had the State of Illinois known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

167.    As a result of Defendants' violations of the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175 *et seq*., the State of Illinois has been damaged in an amount far in excess of millions of dollars exclusive of interest.

168.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Illinois Whistleblower Reward and Protection Act, 740 ILCS 175 *et seq*., on behalf of herself and the State of Illinois.

169.    This Court is requested to accept pendant jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts separate

damage to the State of Illinois in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following

damages to the following parties and against Defendants:

To the STATE OF ILLINOIS:

(1)    Three times the amount of actual damages which the State of Illinois has
       sustained as a result of Defendants' conduct;
(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false
       claim which Defendants caused to be presented to the State of Illinois;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)    The maximum amount allowed pursuant to 740 ILCS 175/4(d), and/or any other
       applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relator-Plaintiff incurred in
       connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and
(4)    Such further relief as this Court deems equitable and just.

## COUNT XII – INDIANA FALSE CLAIMS & WHISTLEBLOWER PROTECTION ACT

170.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs

as if the same were set forth at length herein.

171.    Relator-Plaintiff brings this action on behalf of the State of Indiana to recover

treble damages and civil penalties pursuant to the *qui tam* provisions of the Indiana False Claims

and Whistleblower Protection Act, IC 5-11-5.5-1 *et seq*.

172.    IC 5-11-5.5-2(b) in relevant part provides liability for any person who knowingly

or intentionally:

(1) presents a false claim to the state for payment or approval;

40

(2) makes or uses a false record or statement to obtain payment or approval of a false claim from the state;

* * *

(7) conspires with another person to perform an act described in subdivisions (1) through (6);

173.    Defendants violated IC 5-11-5.5-1, *et seq.* by engaged in the conduct described herein.

174.    Defendants violated the Indiana False Claims and Whistleblower Protection Act, IC 5-11-5.5-1 *et seq.*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Indiana by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

175.    The State of Indiana, by and through the Indiana Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

176.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Indiana in connection with Defendants' conduct. Compliance with applicable Indiana statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Indiana.

177.    Had the State of Indiana known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were

41

premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

178.    As a result of Defendants' violations of the Indiana False Claims and Whistleblower Protection Act, IC 5-11-5.5-1 et seq., the State of Indiana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

179.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to IC 5-11-5.5-4, on behalf of herself and the State of Indiana.

180.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Indiana in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF INDIANA:

(1)    Three times the amount of actual damages which the State of Indiana has sustained as a result of Defendants' conduct;
(2)    A civil penalty of not less than $5,000 for each false claim which Defendants caused to be presented to the State of Indiana;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)    The maximum amount allowed pursuant to IC 5-11-5.5-6, and/or any other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and
(4)    Such further relief as this Court deems equitable and just.

42

## COUNT XIII – IOWA FALSE CLAIMS LAW

181.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

182.    Relator-Plaintiff brings this action on behalf of the State of Iowa to recover treble damages and civil penalties pursuant to the *qui tam* provisions of the Iowa False Claims Law, I.C.A. § 685.1, *et seq*.

183.    Iowa False Claims Law, I.C.A. § 685.2, in pertinent part provides for liability for any person who:

>   (a) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval.
>
>   (b) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.
>
>   (c) Conspires to commit a violation of paragraph "a", "b", "d", "e", "f", or "g".

184.    Defendants violated the Iowa False Claims Law, I.C.A. § 685.1, *et seq*. by engaging in the conduct described herein.

185.    Defendants violated the Iowa False Claims Law, I.C.A. § 685.1, *et seq*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Indiana by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

186.    The State of Iowa, by and through the Iowa Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

187.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Iowa in connection with Defendants' conduct. Compliance with applicable Iowa statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Iowa.

188.   Had the State of Iowa known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

189.   As a result of Defendants' violations of the Iowa False Claims Law, I.C.A. § 685.1, *et seq.*, the State of Iowa has been damaged in an amount far in excess of millions of dollars exclusive of interest.

190.   Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Iowa False Claims Law, I.C.A. § 685.1, *et seq.*, on behalf of herself and the State of Iowa.

191.   This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Iowa in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF IOWA:

(1)   Three times the amount of actual damages which the State of Iowa has sustained as a result of Defendants' conduct;

44

(2)     A civil penalty of not less than $$5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Iowa;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)     The maximum amount allowed pursuant to Iowa False Claims Law, I.C.A. § 685.1, *et seq.*, and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XIV – LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW

192.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

193.    Relator-Plaintiff brings this action on behalf of the State of Louisiana to recover treble damages and civil penalties pursuant to the *qui tam* provisions of the Louisiana Medical Assistance Programs Integrity Law, LSA-R.S. 46:437.1 *et seq.*

194.    LSA-R.S. 46:438.3 in pertinent part provides -

(A) No person shall knowingly present or cause to be presented a false or fraudulent claim;

(B) No person shall knowingly engage in misrepresentation or make, use, or cause to be made or used, a false record or statement material to a false or fraudulent claim;

* * *

(D) No person shall conspire to defraud, or attempt to defraud, the medical assistance programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim;

195.    Defendants violated LSA-R.S. 46:437.1 *et seq.* by engaging in the conduct described herein.

196.    Defendants violated LSA-R.S. 46:437.1, *et seq*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Indiana by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

197.    The State of Louisiana, by and through the Louisiana Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

198.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Louisiana in connection with Defendants' conduct. Compliance with applicable Louisiana statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Louisiana.

199.    Had the State of Louisiana known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

200.    As a result of Defendants' violations of the Louisiana Medical Assistance Programs Integrity Law, LSA-R.S. 46:437.1 *et seq.*, the State of Louisiana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

201.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Louisiana Medical

46

Assistance Programs Integrity Law, LSA-R.S. 46:437.1 *et seq.*, on behalf of herself and the State

of Louisiana.

202.    This Court is requested to accept pendant jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts separate

damage to the State of Louisiana in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following

damages to the following parties and against Defendants:

To the STATE OF LOUISIANA:

(1)     Three times the amount of actual damages which the State of Louisiana has
        sustained as a result of Defendants' conduct;
(2)     A civil penalty of not less than $$5,500 and not more than $11,000 for each false
        claim which Defendants caused to be presented to the State of Louisiana;
(3)     Prejudgment interest; and
(4)     All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)     The maximum amount allowed pursuant to Louisiana Medical Assistance
        Programs Integrity Law, LSA-R.S. 46:437.1 *et seq.*, and/or any other applicable
        provision of law;
(2)     Reimbursement for reasonable expenses which Relator-Plaintiff incurred in
        connection with this action;
(3)     An award of reasonable attorneys' fees and costs; and
(4)     Such further relief as this Court deems equitable and just.

## COUNT XV – MARYLAND FALSE CLAIMS ACT

203.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs

as if the same were set forth at length herein.

204.    Relator-Plaintiff brings this action on behalf of the State of Maryland to recover

treble damages and civil penalties pursuant to the *qui tam* provisions of the Maryland False

Claims Act, MD HEALTH GEN § 2-601, *et seq*.

205.    MD HEALTH GEN § 2-602 in pertinent part provides for liability as follows:

(a) A person may not:

(1) Knowingly present or cause to be presented a false or fraudulent claim for payment or approval;

(2) Knowingly make, use, or cause to be made or used a false record or statement material to a false or fraudulent claim;

(3) Conspire to commit a violation under this subtitle;

206.     Defendants violated MD HEALTH GEN § 2-601, *et seq.* by engaging in the conduct described herein.

207.     Defendants violated MD HEALTH GEN § 2-601, *et seq*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Indiana by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

208.     The State of Maryland, by and through the Maryland Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

209.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Maryland in connection with Defendants' conduct. Compliance with applicable Maryland statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Maryland.

210.     Had the State of Maryland known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were

48

premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

211.    As a result of Defendants' violations of the Maryland False Claims Act, MD HEALTH GEN § 2-601, *et seq.*, the State of Maryland has been damaged in an amount far in excess of millions of dollars exclusive of interest.

212.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Maryland False Claims Act, MD HEALTH GEN § 2-601, *et seq.*, on behalf of herself and the State of Maryland.

213.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Maryland in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF MARYLAND:

(1)    Three times the amount of actual damages which the State of Maryland has sustained as a result of Defendants' conduct;
(2)    A civil penalty of not more than $10,000 for each false claim which Defendants caused to be presented to the State of Maryland;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)    The maximum amount allowed pursuant to Maryland False Claims Act, MD HEALTH GEN § 2-601 *et seq.*, and/or any other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and
(4)    Such further relief as this Court deems equitable and just.

49

## COUNT XVI – MASSACHUSETTS FALSE CLAIMS ACT

214.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

215.    Relator-Plaintiff brings this action on behalf of the Commonwealth of Massachusetts to recover treble damages and civil penalties pursuant to the *qui tam* provisions of the Massachusetts False Claims Act, M.G.L.A. 12 § 5A, *et seq*.

216.    M.G.L.A. 12 § 5B in relevant part provides liability for any person who –

> (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval of a claim by the commonwealth or any political subdivision thereof;

> (3) conspires to defraud the commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim;

217.    Defendants violated the Massachusetts False Claims Act, M.G.L.A. 12 § 5A, *et seq*. by engaging in the conduct detailed herein.

218.    Defendants violated M.G.L.A. 12 § 5A, *et seq*. and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Indiana by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

219.    The Commonwealth of Massachusetts, by and through the Massachusetts Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

50

220.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief: also an express condition of payment of claims submitted to the Commonwealth of Massachusetts in connection with Defendants' conduct. Compliance with applicable Massachusetts statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the Commonwealth of Massachusetts.

221.    Had the Commonwealth of Massachusetts known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

222.    As a result of Defendants' violations of the Massachusetts False Claims Act, M.G.L.A. 12 § 5A *et seq.*, the Commonwealth of Massachusetts has been damaged in an amount far in excess of millions of dollars exclusive of interest.

223.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Massachusetts False Claims Act, M.G.L.A. 12 § 5A *et seq.*, on behalf of herself and the Commonwealth of Massachusetts.

224.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the Commonwealth of Massachusetts in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the COMMONWEALTH OF MASSACHUSETTS:

(1)     Three times the amount of actual damages which the Commonwealth of Massachusetts has sustained as a result of Defendants' conduct;

(2)     A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the Commonwealth of Massachusetts;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)     The maximum amount allowed pursuant to Massachusetts False Claims Act, M.G.L.A. 12 § 5A *et seq.*, and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XVII – MICHIGAN MEDICAID FALSE CLAIMS ACT

225.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

226.    Relator-Plaintiff brings this action on behalf of the State of Michigan to recover treble damages and civil penalties pursuant to the *qui tam* provisions of the Michigan Medicaid False Claims Act, M.C.L.A. 400.601, *et seq*.

227.    M.C.L.A. 400.603 in relevant part provides liability for any person who –

(1) A person shall not knowingly make or cause to be made a false statement or false representation of a material fact in an application for Medicaid benefits;

(2) A person shall not knowingly make or cause to be made a false statement or false representation of a material fact for use in determining rights to a Medicaid benefit;

52

228. Defendants violated the Michigan Medicaid False Claims Act, M.C.L.A. 400.601, *et seq.* by engaging in the conduct described herein.

229. Defendants violated M.C.L.A. 400.601, *et seq*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Indiana by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

230. The State of Michigan, by and through the Michigan Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

231. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Michigan in connection with Defendants' conduct. Compliance with applicable Michigan statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Michigan.

232. Had the State of Michigan known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

233. As a result of Defendants' violations of the Michigan Medicaid False Claims Act, M.C.L.A. 400.601 *et seq*., the State of Michigan has been damaged in an amount far in excess of millions of dollars exclusive of interest.

234.     Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Michigan Medicaid False Claims Act, M.C.L.A. 400.601 *et seq.*, on behalf of herself and the State of Michigan.

235.     This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Michigan in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF MICHIGAN:

(1)     Three times the amount of actual damages which the State of Michigan has sustained as a result of Defendants' conduct;
(2)     A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Michigan;
(3)     Prejudgment interest; and
(4)     All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)     The maximum amount allowed pursuant to M.C.L.A. 400.610a *et seq.*, and/or any other applicable provision of law;
(2)     Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;
(3)     An award of reasonable attorneys' fees and costs; and
(4)     Such further relief as this Court deems equitable and just.

## COUNT XVIII – MINNESOTA FALSE CLAIMS ACT

236.     Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

237.     Relator-Plaintiff brings this action on behalf of the State of Minnesota to recover treble damages and civil penalties pursuant to the *qui tam* provisions of the Minnesota False Claims Act, M.S.A. § 15C.01, *et seq.*

54

238.  M S.A. § 15C.02(a) in pertinent part provides for liability for any person who:

>    (1) knowingly presents, or causes to be presented, to an officer or
>    employee of the state or a political subdivision a false or fraudulent
>    claim for payment or approval;

>    (2) knowingly makes or uses, or causes to be made or used, a false
>    record or statement to get a false or fraudulent claim paid or
>    approved by the state or a political subdivision;

>    (3) knowingly conspires to either present a false or fraudulent
>    claim to the state or a political subdivision for payment or approval
>    or makes, uses, or causes to be made or used a false record or
>    statement to obtain payment or approval of a false or fraudulent
>    claim;

239.  Defendants violated the Minnesota False Claims Act, M.S.A. § 15C.01, *et seq.* by engaging in the conduct described herein.

240.  Defendants violated M.S.A. § 15C.01, *et seq*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Indiana by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

241.  The State of Minnesota, by and through the Minnesota Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

242.  Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Minnesota in connection with Defendants' conduct. Compliance with applicable Minnesota statutes, regulations and Pharmacy

55

Manuals was also an express condition of payment of claims submitted to the State of Minnesota.

243.    Had the State of Minnesota known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

244.    As a result of Defendants' violations of the Minnesota False Claims Act, M.S.A. § 15C.01, *et seq.*, the State of Minnesota has been damaged in an amount far in excess of millions of dollars exclusive of interest.

245.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Minnesota False Claims Act, M.S.A. § 15C.01, *et seq.*, on behalf of herself and the State of Minnesota.

246.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Minnesota in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF MINNESOTA:

(1)     Three times the amount of actual damages which the State of Minnesota has sustained as a result of Defendants' conduct;
(2)     A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Minnesota;
(3)     Prejudgment interest; and
(4)     All costs incurred in bringing this action.

To Relator-Plaintiff:

56

(1)     The maximum amount allowed pursuant to the Minnesota False Claims Act, M.S.A. § 15C.01 *et seq.*, and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XIX – MONTANA FALSE CLAIMS ACT

247.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs

as if the same were set forth at length herein.

248.    Relator-Plaintiff brings this action on behalf of the State of Montana to recover

treble damages and civil penalties pursuant to the *qui tam* provisions of the Montana False

Claims Act, MCA 17-8-401, *et seq.*

249.    The Montana False Claims Act, MCA 17-8-403 in pertinent part provides for

liability for any person who:

> (a) knowingly presents or causes to be presented to an officer or employee of the governmental entity a false or fraudulent claim for payment or approval;
>
> (b) knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the governmental entity;
>
> (c) conspires to defraud the governmental entity by getting a false or fraudulent claim allowed or paid by the governmental entity;

250.    Defendants violated MCA 17-8-403, *et seq.* by engaging in the conduct described

herein.

251.    Defendants violated MCA 17-8-403, *et seq*, and knowingly caused hundreds of

thousands of false claims to be made, used and presented to the State of Montana by its

deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue

of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

252. The State of Montana, by and through the Montana Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

253. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Montana in connection with Defendants' conduct. Compliance with applicable Montana statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Montana.

254. Had the State of Montana known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

255. As a result of Defendants' violations of the Montana False Claims Act, MCA 17-8-401, *et seq*., the State of Montana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

256. Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Montana False Claims Act, MCA 17-8-401, *et seq*., on behalf of herself and the State of Montana.

58

257.    This Court is requested to accept pendant jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts separate

damage to the State of Montana in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following

damages to the following parties and against Defendants:

To the STATE OF MONTANA:

(1)    Three times the amount of actual damages which the State of Montana has
        sustained as a result of Defendants' conduct;
(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false
        claim which Defendants caused to be presented to the State of Montana;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)    The maximum amount allowed pursuant to the Montana False Claims Act, MCA
        17-8-401 *et seq.*, and/or any other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relator-Plaintiff incurred in
        connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and
(4)    Such further relief as this Court deems equitable and just.

## COUNT XX – NEVADA FALSE CLAIMS ACT

258.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs

as if the same were set forth at length herein.

259.    Relator-Plaintiff brings this action on behalf of the State of Nevada to recover

treble damages and civil penalties pursuant to the *qui tam* provisions of the Nevada False Claims

Act, N.R.S. § 357.010, *et seq.*

260.    N.R.S. § 357.040(1) in relevant part provides liability for any person who –

(a) Knowingly presents or causes to be presented a false claim for
payment or approval.

(b) Knowingly makes or uses, or causes to be made or used, a false record or statement to obtain payment or approval of a false claim.

(c) Conspires to defraud by obtaining allowance or payment of a false claim.

261.    Defendants violated the Nevada False Claims Act, N.R.S. § 357.010, *et seq.* by engaging in the conduct described herein.

262.    Defendants violated N.R.S. § 357.010, *et seq*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Nevada by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

263.    The State of Nevada, by and through the Nevada Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

264.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Nevada in connection with Defendants' conduct. Compliance with applicable Nevada statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Nevada.

265.    Had the State of Nevada known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

60

266.     As a result of Defendants' violations of the Nevada False Claims Act, N.R.S. §

357.010, *et seq.*, the State of Nevada has been damaged in an amount far in excess of millions of

dollars exclusive of interest.

267.     Relator-Plaintiff is a private citizen with direct and independent knowledge of the

allegations of this Complaint, who has brought this action pursuant to the Nevada False Claims

Act, N.R.S. § 357.010, *et seq.*, on behalf of herself and the State of Nevada.

268.     This Court is requested to accept pendant jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts separate

damage to the State of Nevada in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following

damages to the following parties and against Defendants:

To the STATE OF NEVADA:

(1)     Three times the amount of actual damages which the State of Nevada has
        sustained as a result of Defendants' conduct;
(2)     A civil penalty of not less than $5,000 and not more than $10,000 for each false
        claim which Defendants caused to be presented to the State of Nevada;
(3)     Prejudgment interest; and
(4)     All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)     The maximum amount allowed pursuant to the N.R.S. § 357.210 *et seq.*, and/or
        any other applicable provision of law;
(2)     Reimbursement for reasonable expenses which Relator-Plaintiff incurred in
        connection with this action;
(3)     An award of reasonable attorneys' fees and costs; and
(4)     Such further relief as this Court deems equitable and just.

## COUNT XXI – NEW HAMPSHIRE HEALTHCARE FALSE CLAIMS LAW

269.     Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs

as if the same were set forth at length herein.

61

270.    Relator-Plaintiff brings this action on behalf of the State of New Hampshire to recover treble damages and civil penalties pursuant to the *qui tam* provisions of the New Hampshire Health Care False Claims Law, N.H. Rev.Stat. Ann §167:61-b *et seq.*

271.    N.H. Rev.Stat. Ann §167:61-b in pertinent part provides liability for any person who –

> (a) Knowingly presents, or causes to be presented, to an officer or employee of the department, a false or fraudulent claim for payment or approval;
>
> (b) Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the department;
>
> (c) Conspires to defraud the department by getting a false or fraudulent claim allowed or paid

272.    Defendants violated N.H. Rev.Stat. Ann §167:61-b *et seq.* by engaging in the conduct described herein.

273.    Defendants violated N.H. Rev.Stat. Ann §167:61-b, *et seq*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of New Hampshire by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

274.    The State of New Hampshire, by and through the New Hampshire Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

275.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New Hampshire in connection with

Defendants' conduct. Compliance with applicable New Hampshire statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of New Hampshire.

276.    Had the State of New Hampshire known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

277.    As a result of Defendants' violations of the New Hampshire Health Care False Claims Law, N.H. Rev.Stat. Ann §167:61-b *et seq.*, the State of New Hampshire has been damaged in an amount far in excess of millions of dollars exclusive of interest.

278.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the New Hampshire Health Care False Claims Law, N.H. Rev.Stat. Ann §167:61-b *et seq.*, on behalf of herself and the State of New Hampshire.

279.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New Hampshire in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF NEW HAMPSHIRE:

(1)    Three times the amount of actual damages which the State of New Hampshire has sustained as a result of Defendants' conduct;

63

(2)     A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of New Hampshire;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)     The maximum amount allowed pursuant to the N.H. Rev. Stat. Ann § 167:61-e., and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XXII – NEW JERSEY FALSE CLAIMS LAW

280.     Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs

as if the same were set forth at length herein.

281.     Relator-Plaintiff brings this action on behalf of the State of New Jersey to recover

treble damages and civil penalties pursuant to the *qui tam* provisions of the New Jersey False

Claims Act, N.J.S.A. 2A:32C-1, *et seq.*

282.     The New Jersey False Claims Act, N.J.S.A. 2A:32C-3 in pertinent part provides

for liability for any person who:

> a. Knowingly presents or causes to be presented to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false or fraudulent claim for payment or approval;
>
> b. Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State;
>
> c. Conspires to defraud the State by getting a false or fraudulent claim allowed or paid by the State;

283.     Defendants violated N.J.S.A. 2A:32C-1, *et seq.* by engaging in the conduct

described herein.

284.    Defendants violated N.J.S.A. 2A:32C-1, *et seq*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of New Jersey by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

285.    The State of New Jersey, by and through the New Jersey Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

286.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New Jersey in connection with Defendants' conduct. Compliance with applicable New Jersey statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of New Jersey.

287.    Had the State of New Jersey known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

288.    As a result of Defendants' violations of the New Jersey False Claims Act, N.J.S.A. 2A:32C-1, *et seq*., the State of New Jersey has been damaged in an amount far in excess of millions of dollars exclusive of interest.

289.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the New Jersey False Claims Act, N.J.S.A. 2A:32C-1, *et seq*., on behalf of herself and the State of New Jersey.

290.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New Jersey in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF NEW JERSEY:

(1)    Three times the amount of actual damages which the State of New Jersey has sustained as a result of Defendants' conduct;
(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of New Jersey;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)    The maximum amount allowed pursuant to the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 *et seq.*, and/or any other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and
(4)    Such further relief as this Court deems equitable and just.

## COUNT XXIII – NEW MEXICO MEDICAID FALSE CLAIMS ACT

291.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

292.    Relator-Plaintiff brings this action on behalf of the State of New Mexico to recover treble damages and civil penalties pursuant to the *qui tam* provisions of the New Mexico Medicaid False Claims Act, N.M. Stat. Ann § 27-14-1, *et seq*.

293.    N.M. Stat. Ann § 27-14-4 in relevant part provides liability for any person who –

(A)  presents, or causes to be presented, to the state a claim for
payment under the Medicaid program knowing that such claim is
false or fraudulent;

(B) presents, or causes to be presented, to the state a claim for
payment under the Medicaid program knowing that the person
receiving a Medicaid benefit or payment is not authorized or is not
eligible for a benefit under the Medicaid program;

(C) makes, uses or causes to be made or used a record or statement
to obtain a false or fraudulent claim under the Medicaid program
paid for or approved by the state knowing such record or statement
is false;

(D) conspires to defraud the state by getting a claim allowed or
paid under the Medicaid program knowing that such claim is false
or fraudulent;

294.    Defendants violated New Mexico Medicaid False Claims Act, N.M. Stat. Ann §
27-14-1, *et seq.* by engaging in the conduct described herein.

295.    Defendants violated N.M. Stat. Ann § 27-14-1, *et seq.*, and knowingly caused
hundreds of thousands of false claims to be made, used and presented to the State of New
Mexico by its deliberate and systematic violation of federal and state laws, including the FDCA,
and by virtue of the fact that none of the claims submitted in connection with its conduct were
even eligible for reimbursement by the Government Healthcare Programs.

296.    The State of New Mexico, by and through the New Mexico Medicaid program
and other state healthcare programs, and unaware of Defendants' conduct, paid the claims
submitted by healthcare providers and third party payers in connection therewith.

297.    Compliance with applicable Medicare, Medicaid and the various other federal and
state laws cited herein was an implied, and upon information and belief, also an express
condition of payment of claims submitted to the State of New Mexico in connection with

Defendants' conduct. Compliance with applicable New Mexico statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of New Mexico.

298.    Had the State of New Mexico known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

299.    As a result of Defendants' violations of the New Mexico Medicaid False Claims Act, N.M. Stat. Ann § 27-14-1 *et seq.*, the State of New Mexico has been damaged in an amount far in excess of millions of dollars exclusive of interest.

300.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the New Mexico Medicaid False Claims Act, N.M. Stat. Ann § 27-14-1 *et seq.*, on behalf of herself and the State of New Mexico.

301.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New Mexico in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF NEW MEXICO:

(1)    Three times the amount of actual damages which the State of New Mexico has sustained as a result of Defendants' conduct;

(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of New Mexico;

(3)     Prejudgment interest; and
(4)     All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)     The maximum amount allowed pursuant to the N.M. Stat. Ann § 27-14-9 *et seq.*, and/or any other applicable provision of law;
(2)     Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;
(3)     An award of reasonable attorneys' fees and costs; and
(4)     Such further relief as this Court deems equitable and just.

## COUNT XXIV – NEW YORK FALSE CLAIMS ACT

302.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs

as if the same were set forth at length herein.

303.    Relator-Plaintiff brings this action on behalf of the State of New York to recover

treble damages and civil penalties pursuant to the *qui tam* provisions of the New York False

Claims Act, NY STATE FIN § 187, *et seq.*

304.    The New York False Claims Act, NY STATE FIN § 189(1) in relevant part

provides liability for any person who –

> (a) knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval;
>
> (b) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> (c) conspires to commit a violation of paragraph (a), (b), (d), (e), (f) or (g) of this subdivision.

305.    Defendants violated the New York False Claims Act, NY STATE FIN § 187, *et seq.* by engaging in the conduct described herein.

306.    Defendants violated NY STATE FIN § 187, *et seq.*, and knowingly caused

hundreds of thousands of false claims to be made, used and presented to the State of New York

by its deliberate and systematic violation of federal and state laws, including the FDCA, and by

virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

307. The State of New York, by and through the New York Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

308. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New York in connection with Defendants' conduct. Compliance with applicable New York statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of New York.

309. Had the State of New York known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

310. As a result of Defendants' violations of the New York False Claims Act, NY STATE FIN § 187 *et seq*., the State of New York has been damaged in an amount far in excess of millions of dollars exclusive of interest.

311. Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to NY STATE FIN § 187 *et seq*., on behalf of herself and the State of New York.

70

312.    This Court is requested to accept pendant jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts separate

damage to the State of New York in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following

damages to the following parties and against Defendants:

To the STATE OF NEW YORK:

(1)    Three times the amount of actual damages which the State of New York has
       sustained as a result of Defendants' conduct;
(2)    A civil penalty of not less than $6,000 and not more than $12,000 for each false
       claim which Defendants caused to be presented to the State of New York;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)    The maximum amount allowed pursuant to the NY STATE FIN § 190(6), and/or
       any other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relator-Plaintiff incurred in
       connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and
(4)    Such further relief as this Court deems equitable and just.

## **COUNT XXV – NORTH CAROLINA FALSE CLAIMS ACT**

313.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs

as if the same were set forth at length herein.

314.    Relator-Plaintiff brings this action on behalf of the State of North Carolina to

recover treble damages and civil penalties pursuant to the *qui tam* provisions of the North

Carolina False Claims Act, N.C.G.S.A. § 1-605, *et seq*.

315.    N.C.G.S.A. § 1-607 in pertinent part provides for liability for any person who:

(1) Knowingly presents or causes to be presented a false or
fraudulent claim for payment or approval.

71

> (2) Knowingly makes, uses, or causes to be made or used, a false
> record or statement material to a false or fraudulent claim.
>
> (3) Conspires to commit a violation of subdivision (1), (2), (4), (5),
> (6), or (7) of this section.

316.    Defendants violated N.C.G.S.A. § 1-605, *et seq*. by engaging in the conduct described herein.

317.    Defendants violated N.C.G.S.A. § 1-605, *et seq*., and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of North Carolina by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

318.    The State of North Carolina, by and through the North Carolina Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

319.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of North Carolina in connection with Defendants' conduct. Compliance with applicable North Carolina statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of North Carolina.

320.    Had the State of North Carolina known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs

72

or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

321.    As a result of Defendants' violations of the North Carolina False Claims Act, N.C.G.S.A. § 1-605, *et seq*., the State of North Carolina has been damaged in an amount far in excess of millions of dollars exclusive of interest.

322.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the North Carolina False Claims Act, N.C.G.S.A. § 1-605, *et seq*., on behalf of herself and the State of North Carolina.

323.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of North Carolina in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF NORTH CAROLINA:

(1)    Three times the amount of actual damages which the State of North Carolina has sustained as a result of Defendants' conduct;
(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of North Carolina;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)    The maximum amount allowed pursuant to the North Carolina False Claims Act, N.C.G.S.A. § 1-605, *et seq*., and/or any other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and
(4)    Such further relief as this Court deems equitable and just.

## COUNT XXVI – OKLAHOMA MEDICAID FALSE CLAIMS ACT

324.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

325.    Relator-Plaintiff brings this action on behalf of the State of Oklahoma to recover treble damages and civil penalties pursuant to the *qui tam* provisions of the Oklahoma Medicaid False Claims Act, 63 Okl.St.Ann. § 5053, *et seq*.

326.    Oklahoma Medicaid False Claims Act, 63 Okl.St.Ann. § 5053.1 in pertinent part provides for liability for any person who:

> 1. Knowingly presents, or causes to be presented, to an officer or employee of the State of Oklahoma, a false or fraudulent claim for payment or approval;
>
> 2. Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;
>
> 3. Conspires to defraud the state by getting a false or fraudulent claim allowed or paid;

327.    Defendants violated the Oklahoma Medicaid False Claims Act, 63 Okl.St.Ann. § 5053, *et seq.* by engaging in the conducted described herein.

328.    Defendants violated 63 Okl.St.Ann. § 5053, *et seq.*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of North Carolina by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

329.    The State of Oklahoma, by and through the Oklahoma Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

330.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Oklahoma in connection with Defendants' conduct. Compliance with applicable Oklahoma statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Oklahoma

331.    Had the State of Oklahoma known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

332.    As a result of Defendants' violations of the Oklahoma Medicaid False Claims Act, 63 Okl.St.Ann. § 5053, *et seq.*, the State of Oklahoma has been damaged in an amount far in excess of millions of dollars exclusive of interest.

333.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Oklahoma Medicaid False Claims Act, 63 Okl.St.Ann. § 5053, *et seq.*, on behalf of herself and the State of Oklahoma.

334.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Oklahoma in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF OKLAHOMA:

(1)    Three times the amount of actual damages which the State of Oklahoma has sustained as a result of Defendants' conduct;

(2)     A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Oklahoma;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)     The maximum amount allowed pursuant to the Oklahoma Medicaid False Claims Act, 63 Okl.St.Ann. § 5053, *et seq*., and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XXVII – RHODE ISLAND FALSE CLAIMS ACT

335.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs

as if the same were set forth at length herein.

336.    Relator-Plaintiff brings this action on behalf of the State of Rhode Island to

recover treble damages and civil penalties pursuant to the *qui tam* provisions of the Rhode Island

False Claims Act, RI ST § 9-1.1-1, *et seq*.

337.    The Rhode Island False Claims Act, RI ST § 9-1.1-3 in pertinent part provides for

liability for any person who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the state or a member of the guard a false or fraudulent claim for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;
>
> (3) conspires to defraud the state by getting a false or fraudulent claim allowed or paid;

338.    Defendants violated the Rhode Island False Claims Act, RI ST § 9-1.1-1, *et seq*.

by engaging in the conduct described herein.

339.    Defendants violated RI ST § 9-1.1-1, *et seq.*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Rhode Island by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

340.    The State of Rhode Island, by and through the Rhode Island Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

341.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Rhode Island in connection with Defendants' conduct. Compliance with applicable Rhode Island statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Rhode Island.

342.    Had the State of Rhode Island known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

343.    As a result of Defendants' violations of the Rhode Island False Claims Act, RI ST § 9-1.1-1, *et seq.*, the State of Rhode Island has been damaged in an amount far in excess of millions of dollars exclusive of interest.

77

344.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the

allegations of this Complaint, who has brought this action pursuant to RI ST § 9-1.1-1, *et seq.*, on

behalf of herself and the State of Rhode Island.

345.    This Court is requested to accept pendant jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts separate

damage to the State of Rhode Island in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following

damages to the following parties and against Defendants:

To the STATE OF RHODE ISLAND:

(1)    Three times the amount of actual damages which the State of Rhode Island has
       sustained as a result of Defendants' conduct;
(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false
       claim which Defendants caused to be presented to the State of Rhode Island;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)    The maximum amount allowed pursuant to the Rhode Island False Claims Act, RI
       ST § 9-1.1-1, *et seq.*, and/or any other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relator-Plaintiff incurred in
       connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and
(4)    Such further relief as this Court deems equitable and just.

## COUNT XXVIII – TENNESSEE FALSE CLAIMS ACT

346.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs

as if the same were set forth at length herein.

347.    Relator-Plaintiff brings this action on behalf of the State of Tennessee to recover

treble damages and civil penalties pursuant to the *qui tam* provisions of the Tennessee Medicaid

False Claims Act, Tenn. Code Ann. § 71-5-1811, *et seq.*

78

348.    Tenn. Code Ann. § 71-5-182(a)(1) in relevant part provides liability for any person who –

> (A)  presents, or causes to be presented to the state, a claim for payment under the Medicaid program knowing such claim is false or fraudulent;
>
> (B)  makes or uses, or causes to be made or used, a record or statement to get a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false;
>
> (C) Conspires to defraud the state by getting a claim allowed or paid under the Medicaid program knowing such claim is false or fraudulent;

349.    Defendants violated the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-1811, *et seq.* by engaging in the conduct described herein.

350.    Defendants violated Tenn. Code Ann. § 71-5-1811, *et seq.*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Tennessee by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

351.    The State of Tennessee, by and through the Tennessee Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

352.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Tennessee in connection with Defendants' conduct.  Compliance with applicable Tennessee statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Tennessee.

79

353.    Had the State of Tennessee known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

354.    As a result of Defendants' violations of the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq*., the State of Tennessee has been damaged in an amount far in excess of millions of dollars exclusive of interest.

355.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181, *et seq*., on behalf of herself and the State of Tennessee.

356.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Tennessee in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF TENNESSEE:

(1)    Three times the amount of actual damages which the State of Tennessee has sustained as a result of Defendants' conduct;
(2)    A civil penalty of not less than $5,000 and not more than $25,000 for each false claim which Defendants caused to be presented to the State of Tennessee;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To Relator-Plaintiff:

80

(1)    The maximum amount allowed pursuant to Tenn. Code Ann. § 71-5-183(d), and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XXIX – TEXAS MEDICAID FRAUD PROTECTION ACT

357.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

358.    Relator-Plaintiff brings this action on behalf of the State of Texas to recover treble damages and civil penalties pursuant to the *qui tam* provisions of V.T.C.A. Hum. Res. Code § 36.001, *et seq*.

359.    V.T.C.A. Hum. Res. Code § 36.002 in relevant part provides liability for any person who –

> (1) knowingly makes or causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;
>
> (2) knowingly conceals or fails to disclose information that permits a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;
>
> (3) knowingly applies for and receives a benefit or payment on behalf of another person under the Medicaid program and converts any part of the benefit or payment to a use other than for the benefit of the person on whose behalf it was received;

360.    Defendants violated V.T.C.A. Hum. Res. Code § 36.001, *et seq*. by engaging in the conduct described herein.

81

361.    Defendants violated V.T.C.A. Hum. Res. Code § 36.001, *et seq.*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Texas by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

362.    The State of Texas, by and through the Texas Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

363.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Texas in connection with Defendants' conduct. Compliance with applicable Texas statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Texas.

364.    Had the State of Texas known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

365.    As a result of Defendants' violations of V.T.C.A. Hum. Res. Code § 36.001, *et seq.* the State of Texas has been damaged in an amount far in excess of millions of dollars exclusive of interest.

366.    Defendants have not, within 30 days after it first obtained information as to such violations, furnish such information to officials of the State responsible for investigating false

claims violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State regarding the claims for reimbursement at issue.

367.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to V.T.C.A. Hum. Res. Code § 36.001, *et seq*., on behalf of herself and the State of Texas.

368.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Texas in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF TEXAS:

(1)    Three times the amount of actual damages which the State of Texas has sustained as a result of Defendants' conduct;
(2)    A civil penalty of not less than $15,000 pursuant to V.T.C.A. Hum. Res. Code § 36.039 for each false claim which Defendants caused to be presented to the State of Texas;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)    The maximum amount allowed pursuant to V.T.C.A. Hum. Res. Code § 36.110, and/or any other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and
(4)    Such further relief as this Court deems equitable and just.

## COUNT XXX – VIRGINIA FRAUD AGAINST TAXPAYERS ACT

369.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

83

370.    Relator-Plaintiff brings this action on behalf of the Commonwealth of Virginia to recover treble damages and civil penalties pursuant to the *qui tam* provisions of the Virginia Fraud Against Taxpayers Act, VA Code Ann. § 8.01-216.1, *et seq*.

371.    VA Code Ann. § 8.01-216.3(A) in pertinent part provides liability for any person who –

> (1) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
> (2) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> (3) Conspires to commit a violation of subdivision 1, 2, 4, 5, 6, or 7;

372.    Defendants violated the Virginia Fraud Against Taxpayers Act, VA Code Ann. § 8.01-216.1, *et seq*. by engaging in the conduct described herein.

373.    Defendants violated the Virginia Fraud Against Taxpayers Act, VA Code Ann. § 8.01-216.1, *et seq*., and knowingly caused hundreds of thousands of false claims to be made, used and presented to the Commonwealth of Virginia by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

374.    The Commonwealth of Virginia, by and through the Virginia Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

375.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief; also an express condition of payment of claims submitted to the Commonwealth of Virginia in connection with

(2)     A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the Commonwealth of Virginia.

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)     The maximum amount allowed pursuant to VA Code ANN §8.01-216.7, and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XXXI – WASHINGTON MEDICAID FRAUD ACT

380.     Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs

as if the same were set forth at length herein.

381.     Relator-Plaintiff brings this action on behalf of the State of Washington to recover

treble damages and civil penalties pursuant to the *qui tam* provisions of the Washington

Medicaid Fraud Act, RCWA 74.66.005, *et seq.*

382.     RC WA 74.66.020 in pertinent part provides for liability for any person who:

(a) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(b) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(c) Conspires to commit one or more of the violations in this subsection (1).

383.     Defendants violated the Washington Medicaid Fraud Act, RCWA 74.66.005, *et seq.* by engaging in the conduct described herein.

384.     Defendants violated the Washington Medicaid Fraud Act, RCWA 74.66.005, *et seq.*, and knowingly caused hundreds of thousands of false claims to be made, used and

86

Defendants' conduct. Compliance with applicable Virginia statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the Commonwealth of Virginia.

376.    Had the Commonwealth of Virginia known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

377.    As a result of Defendants' violations of the Virginia Fraud Against Taxpayers Act, VA Code Ann. § 8.01-216.1 *et seq.*, the Commonwealth of Virginia has been damaged in an amount far in excess of millions of dollars exclusive of interest.

378.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Virginia Fraud Against Taxpayers Act, VA Code Ann. § 8.01-216.1, *et seq.*, on behalf of herself and the Commonwealth of Virginia.

379.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the Commonwealth of Virginia in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the COMMONWEALTH OF VIRGINIA:

(1)    Three times the amount of actual damages which the Commonwealth of Virginia has sustained as a result of Defendants' conduct;

85

presented to the State of Washington by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

385.    The State of Washington, by and through the Washington Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

386.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Washington in connection with Defendants' conduct. Compliance with applicable Washington statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Washington.

387.    Had the State of Washington known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

388.    As a result of Defendants' violations of the Washington Medicaid Fraud Act, RCWA 74.66.005, *et seq.*, the State of Washington has been damaged in an amount far in excess of millions of dollars exclusive of interest.

389.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Washington Medicaid Fraud Act, RCWA 74.66.005, *et seq.*, on behalf of herself and the State of Washington.

390.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Washington in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF WASHINGTON:

(1)    Three times the amount of actual damages which the State of Washington has sustained as a result of Defendants' conduct;

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Washington.

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)    The maximum amount allowed pursuant to the Washington Medicaid Fraud Act, RCWA 74.66.005, and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XXXII – WISCONSIN MEDICAID FALSE CLAIMS ACT

391.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

392.    Relator-Plaintiff brings this action on behalf of the State of Wisconsin to recover treble damages and civil penalties pursuant to the *qui tam* provisions of the Wisconsin False Claims Act, W.S.A. 20.931, *et seq.*

88

393.    W.S.A. 20.931(2) in pertinent part provides for liability for any person who:

> (a) Knowingly presents or causes to be presented to any officer, employee, or agent of this state a false claim for medical assistance.

> (b) Knowingly makes, uses, or causes to be made or used a false record or statement to obtain approval or payment of a false claim for medical assistance.

> (c) Conspires to defraud this state by obtaining allowance or payment of a false claim for medical assistance, or by knowingly making or using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Medical Assistance program.

394.    Defendants violated the Wisconsin False Claims Act, W.S.A. 20.931, *et seq.* by engaging in the conduct described herein.

395.    Defendants violated the Wisconsin False Claims Act, W.S.A. 20.931, *et seq.*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Wisconsin by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

396.    The State of Wisconsin, by and through the Wisconsin Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

397.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Wisconsin in connection with Defendants' conduct. Compliance with applicable Wisconsin statutes, regulations and Pharmacy

Manuals was also an express condition of payment of claims submitted to the State of Wisconsin.

398.    Had the State of Wisconsin known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

399.    As a result of Defendants' violations of the Wisconsin False Claims Act, W.S.A. 20.931, *et seq.*, the State of Wisconsin has been damaged in an amount far in excess of millions of dollars exclusive of interest.

400.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Wisconsin False Claims Act, W.S.A. 20.931, *et seq.*, on behalf of herself and the State of Wisconsin.

401.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Wisconsin in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF WISCONSIN:

(1)    Three times the amount of actual damages which the State of Wisconsin has sustained as a result of Defendants' conduct;
(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Wisconsin.
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)     The maximum amount allowed pursuant to the Wisconsin False Claims Act, W.S.A. 20.931, *et seq.*, and/or any other applicable provision of law;
(2)     Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;
(3)     An award of reasonable attorneys' fees and costs; and
(4)     Such further relief as this Court deems equitable and just.

## COUNT XXXIII – DISTRICT OF COLUMBIA PROCURMENT REFORM AMENDMENT ACT

402.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs

as if the same were set forth at length herein.

403.    Relator-Plaintiff brings this action on behalf of the District of Columbia to

recover treble damages and civil penalties pursuant to the *qui tam* provisions of the District of

Columbia Procurement Reform Amendment Act, D.C. Code § 2-381.01, *et seq*.

404.    D.C. Code § 2-381.02(a) in pertinent part provides liability for any person who –

(1) Knowingly presents, or causes to be presented, to an officer or
employee of the District a false claim for payment or approval;
(2) Knowingly makes, uses, or causes to be made or used, a false
record or statement to get a false claim paid or approved by the
District;

(3) Conspires to defraud the District by getting a false claim
allowed or paid by the District;

405.    Defendants violated the District of Columbia Procurement Reform Amendment

Act, D.C. Code § 2-381.01, *et seq.* by engaging in the conduct described herein.

406.    Defendants violated the District of Columbia Procurement Reform Amendment

Act, D.C. Code § 2-381.01, *et seq.*, and knowingly caused hundreds of thousands of false claims

to be made, used and presented to the District of Columbia by its deliberate and systematic

violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the

91

claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

407.    The District of Columbia, by and through the District of Columbia Medicaid program and other state healthcare programs, and unaware of Defendants' illegal conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

408.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief; also an express condition of payment of claims submitted to the District of Columbia in connection with Defendants' illegal conduct.    Compliance with applicable D.C. statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the District of Columbia.

409.    Had the District of Columbia known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

410.    As a result of Defendants' violations of the District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-381.01 *et seq*., the District of Columbia has been damaged in an amount far in excess of millions of dollars exclusive of interest.

411.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-381.01 *et seq.*, on behalf of herself and the District of Columbia.

412.    This Court is requested to accept pendant jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts separate

damage to the District of Columbia in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following

damages to the following parties and against Defendants:

To the DISTRICT OF COLUMBIA:

(1)    Three times the amount of actual damages which the District of Columbia has
       sustained as a result of Defendants' conduct;
(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false
       claim which Defendants caused to be presented to the District of Columbia.
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)    The maximum amount allowed pursuant to D.C. Code § 2-381.03(f), and/or any
       other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relator-Plaintiff incurred in
       connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and
(4)    Such further relief as this Court deems equitable and just.

## COUNT XXXIV – CHICAGO FALSE CLAIMS ACT

413.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs

as if the same were set forth at length herein.

414.    Relator-Plaintiff brings this action on behalf of the City of Chicago to recover

treble damages and civil penalties pursuant to the *qui tam* provisions of the Chicago False

Claims Act, Chicago Municipal Code 1-22-010, *et seq*.

415.    The Chicago False Claims Act, Chicago Municipal Code 1-22-020, in pertinent

part provides liability for any person who:

        (1) knowingly presents, or causes to be presented, to an official or
        employee of the city a false or fraudulent claim for payment or approval;

93

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the city;

(3) conspires to defraud the city by getting a false or fraudulent claim allowed or paid;

416.    Defendants violated the Chicago False Claims Act, Chicago Municipal Code 1-22-010, *et seq*. by engaging in the conduct described herein.

417.    Defendants violated the Chicago False Claims Act, Chicago Municipal Code 1-22-010, *et seq*., and knowingly caused hundreds of thousands of false claims to be made, used and presented to the City of Chicago by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

418.    The City of Chicago, by and through the City of Chicago Medicaid program and other state healthcare programs, and unaware of Defendants' illegal conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

419.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief; also an express condition of payment of claims submitted to the City of Chicago in connection with Defendants' illegal conduct.   Compliance with applicable the City of Chicago statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the City of Chicago.

420.    Had the City of Chicago known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were

94

premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

421.   As a result of Defendants' violations of the Chicago False Claims Act, Chicago Municipal Code 1-22-010 *et seq*., has been damaged in an amount far in excess of millions of dollars exclusive of interest.

422.   Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Chicago False Claims Act, Chicago Municipal Code 1-22-010 *et seq.*, on behalf of herself and the City of Chicago.

423.   This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the City of Chicago in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the CITY OF CHICAGO:

(1)   Three times the amount of actual damages which the City of Chicago has sustained as a result of Defendants' conduct;
(2)   A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the City of Chicago.
(3)   Prejudgment interest; and
(4)   All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)   The maximum amount allowed pursuant to the Chicago False Claims Act, Chicago Municipal Code 1-22-010 *et seq*., and/or any other applicable provision of law;
(2)   Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;
(3)   An award of reasonable attorneys' fees and costs; and
(4)   Such further relief as this Court deems equitable and just.

430.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief; also an express condition of payment of claims submitted to the City of New York in connection with Defendants' illegal conduct. Compliance with applicable the City of New York statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the City of New York.

431.    Had the City of New York known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

432.    As a result of Defendants' violations of the New York City False Claims Act, Admin. Code §7-801 *et seq*., the City of New York has been damaged in an amount far in excess of millions of dollars exclusive of interest.

433.    Relator-Plaintiff is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the New York City False Claims Act, Admin. Code §7-801 *et seq.*, on behalf of herself and the City of New York.

434.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the City of New York in the operation of its Medicaid program.

WHEREFORE, Relator-Plaintiff respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the CITY OF NEW YORK

## COUNT XXXV – NEW YORK CITY FALSE CLAIMS ACT

424.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

425.    Relator-Plaintiff brings this action on behalf of the City of New York to recover treble damages and civil penalties pursuant to the *qui tam* provisions of the New York City False Claims Act, Admin. Code §7-801, *et seq*.

426.    The New York City False Claims Act, Admin. Code §7-803, in pertinent part provides liability for any person who:

(1) knowingly presents, or causes to be presented, to any city officer or employee, a false claim for payment or approval by the city;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false claim paid or approved by the city;

(3) conspires to commit a violation of paragraph (a), (b), (d), (e), (f) or (g) of this subdivision.

427.    Defendants violated the New York City False Claims Act, Admin. Code §7-801, *et seq*. by engaging in the conduct described herein.

428.    Defendants violated the New York City False Claims Act, Admin. Code §7-801, *et seq.*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the City of New York by its deliberate and systematic violation of federal and state laws, including the FDCA, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

429.    The City of New York, by and through the City of New York Medicaid program and other state healthcare programs, and unaware of Defendants' illegal conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

96

(1)    Three times the amount of actual damages which the City of New York has sustained as a result of Defendants' conduct;

(2)    A civil penalty of not less than $5,000 and not more than $15,000 for each false claim which Defendants caused to be presented to the City of New York.

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Relator-Plaintiff:

(1)    The maximum amount allowed pursuant to the New York City False Claims Act, Admin. Code §7-801 *et seq.*, and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Relator-Plaintiff incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## VI. JURY DEMAND

435.    Pursuant to FED. R. CIV. P. 38, Plaintiffs demand a trial by jury on all Counts

Respectfully Submitted

Eric L. Young, Esquire
Brandon J. Lauria, Esquire
Young Law Group
123 S. Broad St., Suite 1920
Philadelphia, PA 19109
Ph.: (215) 367-5151
Fax: (215) 367-5143
eyoung@young-lawgroup.com

James J. McEldrew III, Esquire
McEldrew Law
123 S. Broad Street, Suite 1920
Philadelphia, PA 19109
Ph: (215) 545-8800
Fax: (215) 545-8800
jim@mceldrewlaw.com

Joseph Trautwein & Associates, LLC
1777 Sentry Parkaway West
Abington Hall, Suite 100
Blue Bell, PA 19422
Ph: (215)764-2301
Fax: (267) 464-0400
jtrautwein@cpmiteam.com

*Counsel for Relator-Plaintiff*

98